TRIMBLE–WEBER et al.

v.

WEBER et al.; Lang, Appellant,

v.

CALLAGHAN et al.; Zellmer & Gruber, Appellee.

[Cite as *Trimble–Weber v. Weber* (1997), 119 Ohio App.3d 402.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 96–G–1997.

Decided April 28, 1997.

*Eric H. Zagrans,* for appellant.

*Zellmer & Gruber* and *Jeffrey P. Posner,* for appellee.

FORD, Presiding Judge.

This is an appeal from the judgment of the Geauga County Court of Common Pleas granting summary judgment in favor of appellee, Zellmer & Gruber, against appellant, Charles V. Lang.

Appellant is an attorney who represented Richard P. Weber in a prior dissolution of marriage proceeding. Weber and his former spouse, Drew Trimble–Weber, were the sole shareholders and directors of Distinctive Lighting Corporation ("Distinctive"). Trimble–Weber sued appellant, Weber, and Weber's business, Deep River Corporation ("Deep River"), alleging that they had conspired to defraud her, diverted the assets and profits of Distinctive, and usurped corporate opportunities that she believes she otherwise would have had.

Shortly before filing the complaint making these allegations, Trimble–Weber's attorney, Thomas O. Callaghan ("Callaghan"), counsel of appellee, wrote a letter to Robert Weber, Weber's brother, a business evaluation consultant, who allegedly acted as an intermediary between Weber and Trimble–Weber regarding Distinctive. Attached to Callaghan's letter was a copy of the complaint that Callaghan intended to file against Weber, Deep River, and appellant. At the time he wrote the letter, Callaghan allegedly was not a properly licensed attorney in Ohio. Callaghan filed the complaint on November 22, 1995.

Appellant vigorously denied the allegations of the complaint. On December 14, 1995, appellant brought a counterclaim against Trimble–Weber and a third party complaint against Callaghan, Thomas O. Callaghan Co., L.P.A., and appellee for libel and defamation of character. Appellee filed its motion for summary judgment on March 28, 1996, and the trial court ordered appellant to respond to appellee's motion by April 23, 1996. Pursuant to Civ.R. 56(F), appellant filed a motion to extend his time to respond to appellee's motion until the completion of discovery. Although the trial court ordered that discovery be completed by October 15, 1996, it allowed appellant only until June 14, 1996, to respond to appellee's motion for summary judgment.

The trial court granted appellee's motion for summary judgment on June 25, 1996. Although the order granting summary judgment did not resolve the claims of all of the parties to the action in the trial court, the trial court's decision and judgment entry included a conclusion that there was no just cause for delay pursuant to Civ.R. 54(B).

From this judgment, appellant raises the following sole assignment of error:

"The trial court erred in granting [appellee's] motion for summary judgment."

Appellant first argues that he satisfied his burden under Civ.R. 56(C) and (E) by providing the trial court with a copy of the transcript of the deposition of

Charles B. Zellmer accompanied by exhibits identified or referred to during the deposition. However, in the trial court's judgment entry, the court stated:

"The evidentiary material submitted by [appellant] Lang with his brief in opposition does not comply with Civ.R. 56(C). The various exhibits are not incorporated in a properly framed affidavit pursuant to Civ.R. 56(E). The deposition of Charles B. Zellmer is neither signed by Mr. Zellmer nor does it contain the court reporter's certification." (Citations omitted.)

Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleading, *depositions*, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." (Emphasis added.)

Civ.R. 30(F) governs depositions and provides as follows:

"(1) Upon request of any party or order of the court the officer shall transcribe the deposition. The officer *shall* certify on the transcribed deposition that the witness was fully sworn or affirmed by the officer and that the transcribed deposition is a true record of the testimony given by the witness." (Emphasis added.)

A deposition transcript must be authenticated before it can be considered as legally acceptable evidence for summary judgment purposes. *Putka v. Parma* (1993), 90 Ohio App.3d 647, 649, 630 N.E.2d 380, 381. If a document is not of the type enumerated in Civ.R. 56(C), a trial court may consider that document when ruling on a motion for summary judgment if there is no objection. *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632, 634. However, it is well within the trial court's discretion to ignore these documents. *Id.*

In the present case, appellant offers a deposition transcript that does not include the court reporter's certification[1] and, thus, does not satisfy the requirements of Civ.R. 30(F). Without the certification, this alleged deposition cannot be a "deposition" for purposes of Civ.R. 56(C). Since this transcript was not a type of evidence enumerated in Civ.R. 56(C), the trial court was not required to

---

1. Appellant claims that the deposition included the court reporter's certification and he has attached such certification to his brief. First, this document is not properly included in the appellate record. Second, the certificate shows that the certificate was not completed until July 1, 1996, several days after the trial court granted appellee's motion for summary judgment. Therefore, at the time the trial court entered summary judgment in favor of appellee, the deposition transcript was not certified.

consider it when it ruled on appellee's motion for summary judgment. Consequently, appellant's first argument is without merit.

In its decision and judgment entry, the trial court held:

"Even if the court were to assume that the exhibits and deposition were appropriately before the court, [appellant] Lang has not met his burden. The conclusory statements contained in [appellant's] brief must be supported by appropriate evidentiary material in order to be considered by this court; they are not."

The substance of appellant's second and primary argument is essentially that as a result of Callaghan's "of counsel" relationship with appellee, he was appellee's agent. Therefore, appellant argues, appellee is liable for Callaghan's torts committed in furtherance of the agency relationship. Appellant further claims that Callaghan was an apparent agent of appellee and, therefore, appellee is liable for Callaghan's torts.

The Code of Professional Responsibility does not define "of counsel," but does provide that "[a] lawyer may be designated 'Of Counsel' on a letterhead if the lawyer has a continuing relationship with a lawyer or law firm, other than as a partner or associate." DR 2–102(A)(4). Further, there are four general types of relationships that have been characterized as "of counsel" relationships:

"Part-time practitioners, who have changed from a full-time to a part-time career; the retired partners from the firm, who want to remain associated with the firm and be available for consultation; the probationary partners-to-be, who are brought into the firm laterally with the expectation of becoming a partner in a short period of time; and those with a permanent status as 'of counsel,' who have the quality of tenure, or something close to it, but lack the expectation of promotion to full partner status." Ohio Advisory Op. 91–18, at 4. See, also, ABA Formal Op. 90–357.

Since Ohio case law fails to address the liability of a law firm for the conduct of an "of counsel" attorney, we will analyze this issue through traditional agency law principles. An agency relationship between two parties is contractual in nature and may be express or implied. *Johnson v. Tansky Sawmill Toyota, Inc.* (1994), 95 Ohio App.3d 164, 167, 642 N.E.2d 9, 10–11. An agency relationship exists only when one party, the principal, exercises the right of control over the actions of another, the agent, and those actions are directed toward the attainment of the principal's objective. *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 173, 24 OBR 403, 404–405, 494 N.E.2d 1091, 1093–1094.

Here, there is no evidence that Callaghan and appellee had an express or implied agreement that Callaghan would act as an agent of appellee. He was

simply "of counsel" in appellee's office. Furthermore, there is no evidence in the record that appellee had any control whatsoever over Callaghan's handling of his cases. Therefore, there is no express agency relationship.

Since there is no express agency relationship, we turn to alternative theories concerning the manner in which an agency relationship can be established. Appellant argues that appellee is liable for Callaghan's actions under an agency-by-estoppel theory. The Supreme Court of Ohio has held:

■ "The doctrine of agency by estoppel, as it might be invoked by a plaintiff in a tort action, rests upon the theory that one has been led to rely upon the appearance of agency to his detriment. It is not applicable where there is no showing of induced reliance upon an ostensible agency." *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 26 O.O. 161, 49 N.E.2d 925, paragraph four of the syllabus.

The court further stated that agency by estoppel is usually applied in situations where a change in position has occurred in reliance upon the appearance of authority. *Id.* at 591, 26 O.O. at 164, 49 N.E.2d at 928–929. See, also, *Cheatwood v. Hall* (Dec. 5, 1986), Portage App. No. 1657, unreported, at 4, 1986 WL 14334.

In the present case, appellee arguably held Callaghan out as an agent by printing his name on the firm's letterhead as "of counsel" and including him within the firm's listing in the Martindale–Hubbell law directory. However, the only outward manifestation upon which appellant relied to his detriment, and which caused him to believe that Callaghan was appellee's agent prior to filing suit, was Callaghan's listing on the firm's letterhead.

■ Appellant was not injured as a result of any belief that Callaghan was appellee's agent. Rather, appellant allegedly suffered injury as a result of Callaghan's actions that were unrelated to appellee's alleged purported manifestations concerning the agency relationship. Appellant did not rely on the care and skill of Callaghan as an agent, but was allegedly injured by Callaghan's intentional or malicious actions. Consequently, appellant has failed to establish that he suffered injury as a result of his reliance on appellee's holding out Callaghan as its agent. Therefore, appellant's argument that appellee is liable to him on an agency theory is meritless.[2]

---

2. A situation in which a client/"of counsel" relationship had been established might well call for a different result than we obtain here depending on that type of underlying factual predicate. However, in the case where a nonclient alleges an injury, such as in the instant matter, there is not necessarily the reliance upon the law firm's relationship with the "of counsel" as could exist with a client.

Appellant next argues that the trial court erred by considering appellee's motion for summary judgment before the completion of discovery. Civ.R. 56(F) states:

"Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

The trial court has broad discretion in regulating the discovery process and its decisions on such matters will not be reversed in the absence of an abuse of discretion. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 89–90, 295 N.E.2d 659, 660–661. Granting a continuance under Civ.R. 56(F) is within the discretion of the trial court and is not mandatory. *Carlton v. Davisson* (1995), 104 Ohio App.3d 636, 648, 662 N.E.2d 1112, 1119–1120. Furthermore, a judgment which prevents the requesting party from pursuing discovery will not be reversed absent a showing that the ruling causes substantial injustice. *Shaver v. Standard Oil Co.* (1990), 68 Ohio App.3d 783, 800, 589 N.E.2d 1348, 1359. See, also, *Clark Cty. Solid Waste Mgt. Dist. v. Danis Clarkco Landfill Co.* (1996), 109 Ohio App.3d 19, 38, 671 N.E.2d 1034, 1046–1047.

In the case at bar, appellant properly requested a continuance, under Civ.R. 56(F), so that he could respond to appellee's motion for summary judgment. Acting properly within its discretion, the trial court granted appellant an extension of only seven weeks, from April 23, 1996, until June 14, 1996. On May 28, 1996, the trial court set October 15, 1996, as the discovery deadline. The trial court then granted appellee's motion for summary judgment on June 25, 1996.

Although this schedule left appellant a relatively short period of time in which to respond to appellee's motion, it did not amount to an abuse of discretion. First, in appellant's motion for additional time to respond to appellee's motion for summary judgment, appellant failed not only to specify the identity of those witnesses he wished to depose, but also to discuss the relevance of any future discovery to the issues involved in appellant's motion for summary judgment.

Second, the trial court was properly exercising its discretion in controlling the discovery process. This case involved numerous parties and claims. The discovery deadline of October 15, 1996, applied to the entire litigation concerning all of the parties. The trial court granted appellant a limited amount of time to respond to appellee's motion for summary judgment in an effort to focus the litigation on appellant's counterclaim. At the time that appellant received a limited extension of time to respond to appellee's motion, he should have vigorously pursued discovery on issues relating to his counterclaim. He did not.

**410**

Accordingly, the trial court did not abuse its discretion in granting appellee's motion for summary judgment before the completion of discovery.

For the foregoing reasons, appellant's assignment of error is without merit, and the judgment of the Geauga County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CHRISTLEY and NADER, JJ., concur.